UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| **TRENT DWIGHT FORD AND** | ) | BK-21-10574-SAH |
| **JILL NICOLE FORD,** | ) | |
| Debtors. | ) | Chapter 7 |
| | ) | |
| **United States Trustee** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Adv. Number: 21- |
| **Trent Dwight Ford and** | ) | |
| **Jill Nicole Ford,** | ) | |
| **Defendants.** | ) | |

## COMPLAINT OBJECTING TO DISCHARGE OF DEBTORS

Plaintiff, Ilene J. Lashinsky, United States Trustee (**"UST"**), brings this complaint against the defendants, Trent Dwight Ford and Jill Nicole Ford ("**Debtors**") for violations of section 727 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532. In support of this complaint the UST alleges and states as follows:

### JURISDICTION

On March 17, 2021, a voluntary petition was filed to initiate bankruptcy case number 21-10574-SAH and this Court has continued to exercise jurisdiction over this case since its filing. Accordingly, this Court has jurisdiction over this adversary proceeding under the provisions of 28 U.S.C. §§ 157 & 1334. This is a core proceeding by reason of 28 U.S.C. §157(b)(2)(J). The UST consents to the entry of final orders and judgments by this Court on any issue in this adversary proceeding pursuant to Rule 7008 of the FED. R. BANKR. P.

1

## VENUE

Because the bankruptcy case is pending in this federal judicial district, venue of this adversary proceeding is also proper in this district pursuant to 28 U.S.C. §1409.

## FACTS SUPPORTING COMPLAINT

The following facts are relevant to the causes of action set forth in this complaint:

### Chronology

**Debtors Trent and Jill Ford**

1. Debtors commenced this present bankruptcy case by the filing of a voluntary bankruptcy petition ("**Petition**") on March 17, 2021, requesting relief under chapter 7 of the Bankruptcy Code (Dckt #1).

2. On March 17, 2021, the Debtors filed their schedules ("**Ford Original Schedules**") and statement of financial affairs ("**Ford original SoFA**") (Dckt #1). Debtors signed their Petition, Schedules, and SoFA under penalty of perjury.

3. Also on March 17, 2021, the Debtors filed their employee income records (Dckt #6).

4. Lyle R. Nelson was appointed as the chapter 7 trustee ("**Trustee**").

5. On April 13, 2021, the Debtors amended their schedules E/F (Dckt #11) ("**Ford First Amended Schedules**") to add an additional liability.

6. On April 20, 2021, the Debtors amended their schedules A/B (Dckt #21) ("**Ford Second Amended Schedules**") to add a small oil and gas interest.

7. The first §341 meeting of creditors ("**Ford 341**") was originally scheduled for April 14,

2021, but was continued to, and concluded on, April 21, 2021.

8. At said 341, the Debtors were questioned about the accuracy of their schedules and, specifically, their income. Although admitting that their income was actually higher than scheduled, the Debtors testimony was that it "wasn't a lot higher".

9. Subsequently, On May 6, 2021, the Debtors amended their SoFA (Dckt #23) ("**Ford Amended SoFA**") to add shareholder distributions received from March 15, 2020, to March 15, 2021, in the amount of $132,514.15.

10. On July 12, 2021, counsel for MidFirst Bank ("**MidFirst**") examined Debtor Jill Ford ("**MidFirst Exam**"). Debtor Trent Ford was also present at this exam and assisted his wife in answering questions.

11. On August 4, 2021, counsel for the UST and counsel for Citizens Bank of Edmond ("**Citizens**") examined both Debtors Trent and Jill Ford ("**UST Exam**" and "**Citizens Exam**", respectively).

12. The objection to discharge deadline was originally set for June 14, 2021. Upon request of the UST, and by agreement with the Debtors, this date was extended to September 13, 2021, by this Court's order dated June 24, 2021 (Dckt #58).

**Debtor Oliver and Olivia Children Apparel, Inc.**

13. In approximately 2014, Debtor Jill Ford began creating and selling children's apparel as a sole proprietor from her home under the name SnowSew.

14. The business grew and, in 2017, Debtor Jill Ford incorporated her business under the name "Oliver & Olivia Children Apparel, Inc." ("**O&O**").

15. Debtor Jill Ford is the 100% shareholder of O&O.

16. Debtor Jill Ford is the president of O&O.

17. Debtor Trent Ford is the vice president of O&O.

18. O&O manufactured and sold children's apparel and gifts on online platforms including Amazon, Etsy, and Jane, LLC.

19. On the same day the Debtors filed their personal bankruptcy case, Debtor Jill Ford filed a bankruptcy petition, schedules and statement of financial affairs on behalf of O&O ("**O&O Schedules**", "**O&O SoFA**").   The case was assigned bankruptcy case number 21-10572-SAH.   Debtor Jill Ford signed the O&O bankruptcy documents under penalty of perjury.

20. The 341 for O&O was held the same day as the 341 for the Debtors' personal bankruptcy case ("**O&O 341**").   Both Debtors gave sworn testimony as debtor representatives at this 341 regarding the affairs of O&O.

21. Debtors were specifically questioned about the amount of compensation, above and beyond W-2 income, they received from O&O.   The answer was that it "wasn't much".

22. On May 6, 2021, O&O amended its SoFA to include Debtor Jill Ford's shareholder distributions (Dckt #29) ("**O&O Amended SoFA**").

23. According to its SoFA, for fiscal year ending November 30, 2020, O&O had gross sales of $3,826,435.56.

24. As of January 16, 2021, O&O employed approximately 47 people, Debtors Jill and Trent Ford among them.

25. Debtors testified at the O&O 341 that all of its employees were laid off sometime between mid-February to early March O&O.

26. Debtors testified that sometime at the end of February 2021 the Debtors Jill and Trent Ford decided to cease operations of O&O.

**Printed Tees Shirt Company**

27. On February 25, 2021, Debtors incorporated a new business, Printed Tees Shirt Company ("**Printed Tees**").

28. Debtor Trent Ford is the 100% owner of Printed Tees.

29. Debtors testified at the MidFirst Exam that Jill Ford was not involved in Printed Tees other than occasionally helping her husband.

**Use of PPP and Other Loan Proceeds**

30. In the year prior to filing bankruptcy, O&O requested and received at least four loans designed to provide relief to businesses due to the Covid pandemic.

31. On April 7, 2020, O&O, through Debtor Jill Ford, received a Paycheck Protection Program ("**PPP Loan**") loan through Midfirst in the amount of $97,300. Said proceeds were deposited into MidFirst O&O account ending in 0609. The purpose of the PPP loan program is to keep workers on payroll and to pay other worker protection costs.

32. On May 18, 2020, O&O, through Debtor Jill Ford, received an Economic Injury Disaster Loan ("EIDL") through the Small Business Administration ("SBA") in the amount of $150,000. Said proceeds were deposited into MidFirst O&O account ending in 0609. The purpose of the loan was to meet financial obligations and operating expenses that could have been met had the COVID pandemic not occurred.

33. On June 4, 2020, the Debtors paid $16,000 to Neal McGee Homes towards the purchase of their new home, then under construction. The source of these funds was ultimately from Midfirst O&O account ending in 0609.

34. The new home, in the Rose Creek Addition to Edmond, Oklahoma, was completed in

November 2020, and had a purchase price of $805,214.

35. On July 29, 2020, the Debtors made a payment of $7,417.57 to Neal McGee Homes towards the purchase of their new home. The source of these funds was ultimately from Midfirst O&O account ending in 0609.

36. On September 28, 2020, O&O, through Debtor Jill Ford, received a Main Street Loan from Citizens in the amount of $405,686.84. Said funds were deposited into Citizens O&O account ending in 3394. The purpose of the loan was to assist O&O with capital expenditures and payroll.

37. On September 30, 2020, the Debtors paid another $40,000 to Neal McGee Homes towards the purchase of their new home. The source of these funds was ultimately from Citizens O&O account ending in 3394.

38. On October 23, 2020, the Debtors paid another $73,632 to Neal McGee Homes towards the purchase of their new home. The source of these funds was ultimately from Citizens O&O account ending in 3394.

39. On November 5, 2020, approximately 90 days before Debtors laid off all the O&O employees, O&O, through Debtor Jill Ford, signed a lease for a 2020 Mercedes-Benz valued at $84,650.

40. Also on November 5, 2020, O&O, through Debtor Jill Ford, purchased a 2019 Cadillac Escalade for $84,875.48.

41. On November 7, 2020, Debtor Jill Ford, along with her mother Cheryl Kliewer, purchased a 2017 Cadillac XT5 for $41,985.36.

42. On November 12, 2020, Debtors Jill and Trent Ford closed on their brand-new $805,214 home in the Rose Creek Addition to Edmond, Oklahoma. Prior to the closing date, from

|     |     |
| --- | --- |
|     | June 2020 thru October 2020, and as referenced in above paragraphs 31, 33, 35, 36, the Debtors paid a total of $160,800 toward the closing of the home. The source of these funds was ultimately the aforementioned various loan proceeds. |
| 43. | On January 25, 2021, less than one month before Debtors laid off all O&O employees, O&O received a second PPP loan from Citizens in the amount of $174,543.30.   Said funds were deposited into Citizens O&O account ending in 3394. To reiterate, the purpose of the PPP loan program is to keep workers on payroll and to pay other worker protection costs. |
| 44. | Sometime at the end of February 2021, O&O purportedly shut down. |
| 45. | Sometime between mid-February to early March 1, 2021, O&O purportedly laid off all its employees. |
| 46. | At the O&O 341, the Debtors testified that O&O's employees were **not** all paid the wages they were due. |
| 47. | At the O&O 341, the Debtors further testified that they did **not** use the O&O loan proceeds for personal use. |
| 48. | Contrary to the intended use, and contrary to their sworn testimony, the Debtors, by and through O&O, used the proceeds of the EIDL loan to pay off other debt. |
| 49. | Additionally, contrary to the intended use and contrary to their sworn testimony, the Debtors, by and through O&O, used the proceeds of the Main Street Loan to close on their brand-new $805,214 home in Rose Creek Addition.  Without these loan proceeds, the Debtors would not have been able to close on their home. |
| 50. | Further, contrary to the intended use and contrary to their sworn testimony, the Debtors, by and through O&O, used the proceeds of the PPP loans to pay personal expenses and to continue their lavish lifestyle. |

51. At the MidFirst, UST, and Citizens Exams, the Debtors admitted that they had, in fact, used the O&O loan proceeds for their own personal expenses and lifestyle.

52. The Debtors went on to admit that statements made to the contrary at their 341's were false.

53. The conduct and false testimony of the Debtors with respect to these loan proceeds shows an intent to conceal from their creditors and bankruptcy officials the true nature of their use of the loan proceeds. At a minimum, the Debtors acted with a reckless disregard when filing their bankruptcy documents and when giving sworn testimony.

## Income

**O&O Distributions**

54. According to the Ford Original SoFA Debtors' income for 2020 was $25,000.04 and $11,730.75, respectively. Said income stemmed from W2 wages paid to the Debtors from O&O.

55. At the Ford 341, the Debtors testified under penalty of perjury that their schedules and SoFA were correct.

56. However, after being questioned by creditors and the UST, the Debtors admitted to receiving company distributions above and beyond their W2 wages.

57. On May 6, 2021, the Debtors amended their Ford SoFA to include distributions of $132,514.15 for the time period of March 15, 2020, to March 15, 2021. No distributions were disclosed for the two years prior to 2020.

58. At the UST Exam the Debtors acknowledged that their distributions were actually much higher than reported for 2020. The Debtors also acknowledged receiving company distributions for years prior to 2020.

59. The conduct and false testimony of the Debtors with respect to their historical income shows an intent to conceal from their creditors and bankruptcy officials the true source and amount of their income. At a minimum, the Debtors acted with a reckless disregard in filing their Ford bankruptcy schedules and statements of financial affairs, including any amendments, as well as when giving sworn testimony.

**Current Income**

60. At the Ford 341 the Debtors testified that their only current income was unemployment benefits along with cash gifts from Debtor Jill Ford's father.

61. The Debtors swore under penalty of perjury that they were no longer receiving any income or distributions from O&O.

62. The Debtors further swore under penalty of perjury that they were not receiving any income or distributions from Printed Tees.

63. Bank records reveal, however, that the Debtors did receive cash distributions from both O&O and Printed Tees right before and after filing bankruptcy. In fact, the Debtors had cash deposits of $48,408.82 in one of their personal bank accounts during March 2021, the month they filed bankruptcy.

64. Further, during April 2021, the month after they filed bankruptcy, the Debtors had cash deposits of $19,569 in a newly opened bank account. This was the same month their 341 was held when they asserted that they were not receiving any income.

65. At the UST Exam, the Debtors admitted to making false statements at the Ford 341 regarding their current income.

66. The conduct and false testimony of the Debtors with respect to their current income shows

an intent to conceal from their creditors and bankruptcy officials the true nature and amount of their income and continuing business interests. At a minimum, the Debtors acted with a reckless disregard in filing their bankruptcy schedules and statements of financial affairs, including any amendments, as well as when giving sworn testimony.

### Business Operations

**O&O**

67. In the Ford original schedules, the Debtors assert that O&O was no longer operating as of March 1, 2021.

68. O&O's schedules further state that O&O was no longer operating as of March 1, 2021.

69. Bank records reveal that O&O continued to sell merchandise during March 2021, even after the bankruptcy filings. The Debtors were the personal beneficiaries of the continued sale of merchandise.

70. The "operations" of O&O were simply scaled back and transferred to Printed Tees.

71. The conduct and false testimony of the Debtors with respect to the operations of O&O shows an intent to conceal from their creditors and bankruptcy officials the true nature of their business interest. At a minimum the Debtors acted with a reckless disregard in filing both the Ford and O&O bankruptcy schedules and statements of financial affairs, including any amendments, as well as when giving sworn testimony.

**Printed Tees**

72. In the Ford original schedules and original SoFA, filed on March 17, 2021, the Debtors assert that Printed Tees "was not yet started".

73. At both the Ford and O&O 341's, the Debtors again asserted that O&O was no longer operating as of the end of February/beginning of March 2021, and indicated that Printed Tees was not yet operating.

74. However, bank records reveal that Printed Tees was receiving deposits into its bank account prior to O&O's bankruptcy filing.

75. Based on the bank records, it is clear that Printed Tees was simply a continuation of O&O and was not operated as a separate independent entity.

76. Debtors testified at both the Ford and O&O 341's, and the MidFirst Exam, that Jill Ford was not involved in Printed Tees.

77. However, subsequent testimony from the MidFirst and UST Exams indicate that Debtor Jill Ford ran Printed Tees in the same fashion as she had O&O.

78. At her UST Exam, Jill Ford admitted that she, not Trent Ford, was essentially running Printed Tees.

79. The conduct and false testimony of the Debtors with respect to this business interest shows an intent to conceal from their creditors and bankruptcy officials the true nature of this business interest. At a minimum, the Debtors acted with a reckless disregard in filing both the Ford and O&O bankruptcy schedules and statements of financial affairs, including any amendments, as well as when giving sworn testimony.

## Louis Vuitton Purses

80. In the Ford original and amended schedules, the Debtors list an interest in fifteen (15) Louis Vuitton handbags ("handbags"), which they value at $9,500. In Debtors' Schedule D, all of said handbags are listed as having a possessory security interest against them.

81. The trustee inquired about the handbags at the Ford 341 and was told by the Debtors that the lienholder had possession of those bags.

82. However, at the UST Exam Debtor Jill Ford testified that she sold several of those bags in April 2021. Some of the bags were sold just days prior to the Ford 341. Some of the bags were sold just days after the 341. Bank records reveal Debtors were paid at least $13,050 for the sale of the bankruptcy estate's handbags, which they deposited into a Ford personal bank account, post bankruptcy.

83. The conduct and false testimony of the Debtors with respect to this estate property shows an intent to conceal from their creditors and bankruptcy officials the true circumstances regarding these handbags. At a minimum, the Debtors acted with a reckless disregard in filing their bankruptcy schedules and statements of financial affairs, including any amendments, as well as when giving sworn testimony.

## FIRST CLAIM FOR RELIEF

The UST re-adopts and re-alleges the contents of paragraphs 1 through 83 and further alleges and states as follows:

84. The Debtors in the execution of the Ford original Petition, Schedules and SoFA under "penalty of perjury" knowingly and fraudulently made false oaths in violation of 11 U.S.C.

§ 727(a)(4)(A). Debtors false statements and oaths related materially to the bankruptcy case.

## SECOND CLAIM FOR RELIEF

The UST re-adopts and re-alleges the contents of paragraphs 1 through 84 and further alleges and states as follows:

85.  The Debtors in the execution of the Ford amended Schedules and Amended SoFAs under "penalty of perjury" knowingly and fraudulently made false oaths in violation of 11 U.S.C. § 727(a)(4)(A). Debtors false statements and oaths related materially to the bankruptcy case.

## THIRD CLAIM FOR RELIEF

The UST re-adopts and re-alleges the contents of paragraphs 1 through 85 and further alleges and states as follows:

86.  At the Ford §341 meeting of creditors the Debtors knowingly and fraudulently made false oaths in violation of 11 U.S.C. § 727(a)(4)(A). Debtors false statements and oaths related materially to the bankruptcy case.

## FOURTH CLAIM FOR RELIEF

The UST re-adopts and re-alleges the contents of paragraphs 1 through 86 and further alleges and states as follows:

87.  At the O&O §341 meeting of creditors the Debtors knowingly and fraudulently made false oaths in violation of 11 U.S.C. § 727(a)(7). Debtors false statements and oaths related materially to the bankruptcy case.

**FIFTH CLAIM FOR RELIEF**

The UST re-adopts and re-alleges the contents of paragraphs 1 through 87 and further alleges and states as follows:

88. At the Bankruptcy Rule 2004 examinations the Debtors knowingly and fraudulently made false oaths in violation of 11 U.S.C. § 727(a)(4)(A). Debtors false statements and oaths related materially to the bankruptcy case.

**SIXTH CLAIM FOR RELIEF**

The UST re-adopts and re-alleges the contents of paragraphs 1 through 88 and further alleges and states as follows:

89. The Debtors concealed possession of their Louis Vuitton handbags from the trustee in violation of 11 U.S.C. § 727(a)(2)(B).

90. The Debtors further concealed their post-petition sale of said handbags, keeping the proceeds in further violation of 11 U.S.C. §727(a)(2)(B).

91. Debtors took these actions with the intent to hinder, delay or defraud creditors, the case Trustee, and the UST.

**PRAYER FOR RELIEF**

WHEREFORE, the United States Trustee, plaintiff herein, requests this Court to enter judgment denying Debtor/Defendants, Trent Dwight Ford and Jill Nicole Ford, a discharge for violation of 11 U.S.C. §727(a)(2)(B) and/or U.S.C. §727(a)(4)(A) the UST further requests the right to amend this complaint based on ongoing discovery; and for such other and further relief as this Court may deem just, equitable and proper.

Respectfully Submitted,

ILENE J. LASHINSKY
UNITED STATES TRUSTEE


s/ Marjorie J. Creasey
_____
Marjorie J. Creasey, OBA#17819
Assistant United States Trustee
215 Dean A. McGee, Fourth Floor
Oklahoma City, OK   73102
Tel. (405) 231-4393
Fax (405) 231-5958
Marjorie.creasey@usdoj.gov

15